VANESSA H. WIDENER (Bar No. 203967)
  vhw@amclaw.com
JENNIFER S. MUSE (Bar No. 211779)
  jsm@amclaw.com
ANDERSON, McPHARLIN & CONNERS LLP
444 South Flower Street
Thirty-First Floor
Los Angeles, California 90071-2901
TELEPHONE: (213) 688-0080 ♦ FACSIMILE: (213) 622-7594

Attorneys for Plaintiff,
FEDERAL DEPOSIT INSURANCE CORPORATION
as Receiver for INDYMAC BANK, F.S.B.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for INDYMAC BANK, F.S.B., <br><br> Plaintiff, <br><br> vs. <br><br> WALL STREET MORTGAGE BANKERS, LTD, a New York corporation, <br><br> Defendant. | Case No. 2:11-cv-05648 DDP (AGRx) <br><br> **FIRST AMENDED COMPLAINT FOR NEGLIGENCE AND BREACH OF CONTRACT** |

Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B. ("FDIC"), for claims for relief against defendant WALL STREET MORTGAGE BANKERS, LTD., a New York corporation ("WALL STREET" or "Defendant"), alleges as follows:

## JURISDICTION

1. This Court has original jurisdiction of this civil action pursuant to 12 U.S.C. § 1819(b)(2)(A). As a suit brought by the FDIC, this suit is deemed to arise under the laws of the United States.

## VENUE

2. Venue is properly in the Central District of California, pursuant to 28 U.S.C. § 1391, in that Defendant is authorized to do and is doing business in this jurisdiction and therefore is subject to personal jurisdiction in this district at the time the action is commenced and has sufficient minimum contacts with the County of Los Angeles.

## THE PARTIES

3. The FEDERAL DEPOSIT INSURANCE CORPORATION is a government entity appointed by the Office of Thrift Supervision to act as Receiver for INDYMAC BANK, F.S.B. ("INDYMAC") pursuant to 12 U.S.C. §1821(d)(2)(B). The rights to pursue the claims identified in this Complaint were retained by or transferred to the FDIC.

4. INDYMAC was a FDIC-insured financial institution which was authorized to do business in the State of California and in the County of Los Angeles, among other counties.

5. The FDIC is informed and believes and thereon alleges that defendant WALL STREET is a New York corporation engaged in the business of processing, packaging, selling and/or servicing loans secured by real property. WALL STREET is authorized to do and doing business in the County of Los Angeles.

## THE AGREEMENT

6. On or about June 7, 2006, INDYMAC and WALL STREET entered into a business relationship governed by a written Seller Contract and e-MITS™ User Agreement (hereinafter "Agreement"). The Agreement sets forth terms and conditions, pursuant to which INDYMAC would purchase and/or fund loans (the "Loans") processed, packaged and submitted by WALL STREET. The Agreement provides that these Loans must satisfy specified criteria as more fully set forth in the Agreement.

7. The Agreement provides that WALL STREET desires to sell mortgage loans to INDYMAC, and INDYMAC desires to purchase mortgage loans from Seller pursuant to the terms of this Contract, the INDYMAC Lending Guide as amended, supplemented or otherwise modified from time to time (the "Lending Guide"), and the e-MITS User Guide (the e-MITS Guide together with the Lending Guide are collectively referred to as the "Guide").

8. WALL STREET agreed to diligently perform all duties incident to the sale and/or servicing, as applicable, of all mortgage loans which may be sold by Seller to an/or serviced by Seller for INDYMAC from time to time and such other mortgage loans as INDYMAC and Seller may mutually agree upon. In the performance of such duties, Seller shall comply with all of the applicable provisions of the Guide and with all other reasonable requirements and instructions of INDYMAC.

9. The Guide was incorporated into the Contract and WALL STREET agreed to perform all of the obligations of a seller of mortgage loans, and to comply with the terms, conditions, procedures and requirements set forth in the Guide.

10. A copy of the Guide was in the possession of, or available to, WALL STREET at all relevant times.

11. Unless otherwise noted, the terms "Seller" and "Customer" and "Seller/Customer" may be used interchangeably below, and all three terms shall refer to WALL STREET.

12. The Guide is amended and updated from time to time pursuant to a standard procedure provided therein, whereby each Seller receives a bulletin and notice of such changes on a regular basis. The changes are binding upon the Seller pursuant to the terms of the Guide and the Agreement, unless the Seller provides notice of termination of the Agreement prior to the effective date of such changes.

13. The Guide provides that the Seller represents and warrants to FDIC/INDYMAC as follows with respect to each loan delivered to FDIC/INDYMAC as of the date of purchase of the loan by FDIC/INDYMAC:

**1206.02 General Loan Eligibility**

Following are the general loan eligibility representations and warranties:

(a) The Loan conforms in all respects to the requirements of this Guide, and the information set forth in each Loan Document delivered by the Seller conforms in all respects to the requirements of the Guide and is true, complete and accurate, and no material fact about the Loan has been misstated or omitted.

(b) There are no circumstances or conditions with respect to the Security Instrument, the Subject Property, the Mortgagor, the Mortgagor's credit standing or the origination of the Loan that could cause private institutional investors who invest in loans with similar loan program parameters to regard the Loan as an unacceptable investment, cause the Loan to become Delinquent or adversely affect the value or marketability of the Loan.

(d) The Seller has good title to and is the sole owner and holder of the Loan and has free and marketable title thereto, free and clear of any and all liens, pledges, charges or security interests of any nature and has full right and authority, subject to no interest or participation of, or agreement with any other party, to sell and assign the Loan to the Company. The transfer and assignment of

the Loan by Seller validly transfers such Loan to the Company free and clear of any liens, pledges, charges or security interest or other encumbrances. (Guide, § 1206 Representations and Warranties Regarding Loans.)

14. Section 1217.01 of the Guide states as follows:

**1217.01  Credit and Property Underwriting**

The Seller shall be responsible for all credit and property underwriting regardless of whether the information was documented by the Seller, any organization related to the Seller, or any organization selected by the Seller. This includes, but is not limited to, appraisals, Borrower credit information and all other documents used to assess each Loan. The Seller represents and warrants that all Loans sold to the Company have been prudently originated and underwritten in accordance with the Company's origination and underwriting guidelines set forth in this Guide. In addition, the Seller represents and warrants that all of the information included in the Loan Documents concerning the Mortgagor is true, complete and accurate....

15. Section 2103.01 of the Guide sets forth the requirement that the property be owner occupied. That provision provides as follows:

**2103.01 Primary Residence**

A primary residence is defined as a one-to-four family property that is the Borrower's primary residence. At least one of the Borrowers must occupy and take title to

the property and execute the note and security instrument.

A Borrower may have only one primary residence.

16. In the Agreement, the Seller reaffirms that the representations and warranties stated in the Guide are true and correct and agrees to undertake all of the obligations stated in the Guide upon the execution of this Contract and upon the sale of each mortgage loan to INDYMAC, unless expressly waived in writing by INDYMAC.

17. The Agreement provides that all representations and warranties made, and obligations undertaken by WALL STREET shall survive any liquidation of the mortgage loans, any purchase or funding of the mortgage loans by INDYMAC, its assignees or designees, and that all such representations and warranties shall inure to the benefit of INDYMAC, its assignees or designees, and any transferee of any mortgage loan.

## SUBMISSION OF LOANS TO FDIC/INDYMAC

18. Pursuant to the provisions contained in the Agreement and subject to the terms and conditions of the Guide, WALL STREET processed, packaged and submitted the subject loans to INDYMAC for funding.

## PERFORMANCE BY FDIC/INDYMAC

19. The FDIC and INDYMAC performed all of their obligations to WALL STREET under and in accordance with the Agreement and the Guide, except any obligations the FDIC and INDYMAC were prevented or excused from performing by the acts and breaches of WALL STREET.

20. The Loans submitted by WALL STREET to INDYMAC failed to meet the documentation requirements of, or otherwise failed to comply with, the terms and conditions of the Agreement and the Guide governing the submission of the Loans. The failures constitute violations of the representations and warranties by WALL STREET to INDYMAC in the Agreement and the Guide.

21. On various occasions, the FDIC and INDYMAC demanded that WALL STREET perform its obligations under the Agreement and the Guide, with regard to the subject loans. WALL STREET failed and refused to perform those obligations, despite having agreed and committed to do so as a condition of INDYMAC's willingness to fund the subject loans.

## COMMON ALLEGATIONS

### GOMEZ LOAN

22. On or about October 27, 2006, WALL STREET submitted to INDYMAC a loan to M. Gomez (loan no. xxxxx9558) in the principal amount of $288,000, which loan was secured by a property located at 1511 River Road, Edgewater, New Jersey (Gomez Loan).

23. Ann-Marie Sasto ("Sasto") was the loan officer on behalf of WALL STREET on the Gomez Loan.

24. Sasto misrepresented material information in the loan application and supporting documents for the Gomez loan. Sasto, on behalf of WALL STREET, submitted a loan application which indicated that the borrower was a senior project manager with The Garden City Group for four years earning $9,000 which calculates to $108,000 annually.

25. Shortly after the loan funded, the loan went into default and INDYMAC was forced to foreclose on the Edgewater property.

26. Subsequent to the loan defaulting, the FDIC discovered that at the time of the loan application, the borrower was actually a claim administrator for The Garden City Group earning only $85,623 annually.

27. Had Sasto and WALL STREET accurately disclosed the borrower's financial condition, INDYMAC would not have purchased or funded the Gomez Loan because it exceeded the debt-to-income ratio cap for this type of loan.

28. The FDIC, as INDYMAC's successor-in-interest, has been damaged on the Gomez Loan in an amount to be proven at trial, but not less than $100,800, plus interest, costs and attorneys' fees.

### CARVALHO LOAN

29. On or about July 16, 2007, WALL STREET submitted to INDYMAC a loan to R. Carvalho (loan no. xxxxx3108) in the principal amount of $740,800, which loan was secured by a property located at 24434-24436 Ward Street, Torrance, California ("Carvalho Loan").

30. Sheila Voskeritchian ("Voskeritchian") was the loan officer on behalf of WALL STREET on the Carvalho Loan.

31. Voskeritchian misrepresented material information in the loan application and supporting documents for the Carvalho Loan. Voskeritchian, on behalf of WALL STREET, submitted a loan application which indicated that the borrower was a self-employed computer consultant for four years and five months earning $16,000 which calculates to $192,000 annually.

32. Shortly after the loan funded, the loan went into default and INDYMAC was forced to foreclose on the Torrance property.

33. Subsequent to the loan defaulting, the FDIC discovered that at the time of the loan application, the borrower was actually a computer programmer employed by Media Services earning only $65,000 annually.

34. Had Voskeritchian and WALL STREET accurately disclosed the borrower's financial condition, INDYMAC would not have purchased or funded the Carvalho Loan because it exceeded the debt-to-income ratio cap for this type of loan.

35. The FDIC, as INDYMAC's successor-in-interest, has been damaged on the Carvalho Loan in an amount to be proven at trial, but not less than $185,683, plus interest, costs and attorneys' fees.

## BADGER LOAN

36. On or about October 17, 2006, WALL STREET submitted to INDYMAC a loan to J. Badger (loan no. xxxxx5215) in the principal amount of $360,000, which loan was secured by property located at 66 Warner Avenue, Hempstead, New York ("Badger Loan").

37. Felipe Rodriguez ("Rodriguez") was the loan officer on behalf of WALL STREET on the Badger Loan.

38. The FDIC is informed and believes and thereon alleges that Rodriguez misrepresented material information in the loan application and supporting documents for the Badger Loan. Specifically, the borrower's credit was misrepresented in that it was not disclosed that the borrower had another mortgage obligation of $380,000 for property located at 43 James L. Burrell Ave., Hempstead, NY. In addition, the borrower's intent to occupy the subject property was misrepresented.

39. Shortly after the loan funded, the loan went into default and INDYMAC was forced to foreclose on the Hempstead property.

40. Had Rodriguez and WALL STREET accurately disclosed the borrower's financial condition, INDYMAC would not have purchased or funded the Badger Loan.

41. The FDIC, as INDYMAC's successor-in-interest, has been damaged on the Badger Loan in an amount to be proven at trial, but not less than $302,822, plus interest, costs and attorneys' fees.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

42. The FDIC realleges and incorporates herein by reference paragraphs 1 through 41, inclusive, of this First Amended Complaint.

43. Pursuant to the provisions contained in the Agreement and the Guide, WALL STREET sold to INDYMAC the Loans which are identified in Paragraphs 22-41 above.

44. The FDIC and INDYMAC performed their obligations pursuant to the Agreement and the Guide, except any obligations that have been prevented or excused by the acts and breaches of WALL STREET.

45. In submitting the subject loans to INDYMAC, WALL STREET breached the representations and warranties contained in the Agreement and the Guide.

46. Accordingly, on various occasions, the FDIC and INDYMAC demanded that WALL STREET comply with its contractual obligations based on WALL STREET's violations of the Agreement and the Guide.

47. WALL STREET failed and refused to comply with its contractual obligations despite the FDIC and INDYMAC's demands for the same.

48. As a proximate result of WALL STREET's breach of contract, including, but not limited to, its failure to perform its obligations under the Agreement and the Guide, INDYMAC has been damaged in an amount to be proven at the time of trial, plus interest, attorneys' fees and costs. The FDIC, as INDYMAC's successor-in-interest, has been damaged as a result of the breach by WALL STREET.

## SECOND CLAIM FOR RELIEF
### NEGLIGENCE

49. The FDIC realleges and incorporates herein by reference paragraphs 1 through 48, above, as if they were set forth again in full.

50. As a mortgage broker with a pecuniary interest in the transactions whereby INDYMAC purchased and/or funded loans submitted by WALL STREET, Defendant owed INDYMAC a duty to act in accordance with the law and in accordance with custom practices and standards of conduct of a

professional mortgage broker prevailing in the mortgage industry. As part of this duty, Defendant owed INDYMAC a duty that cannot be delegated to third parties or independent contractors. As part of this duty, Defendant owed INDYMAC a duty to use reasonable care under the circumstances to refrain from supplying false information for the guidance of INDYMAC in funding these loans. Defendant knew that the information it was providing to INDYMAC would be used and relied upon by INDYMAC in deciding to purchase and/or fund these loans.

51. In breach of its duty to INDYMAC, Defendant negligently provided false information to INDYMAC in connection to the Loans.

52. In breach of its duty to INDYMAC, Defendant negligently failed to disclose material facts to INDYMAC in connection with the Loans.

53. INDYMAC relied upon the Defendant to conduct its business in accordance with the duty of care implied by the law and the custom of the mortgage industry, and believed that the information submitted by the Defendant was true and had been reviewed in accordance standards prevailing in the mortgage industry.

54. INDYMAC has been damaged because it relied upon the proper performance by the Defendant of its professional duties as a mortgage broker in making the decision to fund the loans. The FDIC, as INDYMAC's successor-in-interest, has been damaged as a result of the breach of duties by the Defendant, in an amount subject to proof at trial, plus interest, costs and attorneys' fees.

## DEMAND FOR RELIEF

**WHEREFORE**, the FDIC prays for judgment as follows:

1. For compensatory damages, according to proof at trial, plus interest, costs and attorneys' fees;

2. For prejudgment interest at the legal rate;

3. For costs of suit and reasonable attorneys' fees incurred herein; and,

///

4.  For such other and further relief as the Court deems just and proper.

DATED: September 8, 2011

ANDERSON, McPHARLIN & CONNERS LLP

By: _____
Vanessa H. Widener
Jennifer S. Muse
Attorneys for Plaintiff,
FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

893694.1 5662.117

12
FIRST AMENDED COMPLAINT